1  Seth M. Lehrman (178303)
   seth@epllc.com
2  EDWARDS POTTINGER LLC
   425 North Andrews Avenue, Suite 2
3  Fort Lauderdale, FL 33301
   Telephone: 954-524-2820
4  Facsimile:  954-524-2822

5  Attorney for Plaintiff
   Joan Spencer-Ruper

6

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    SOUTHERN DIVISION

11 JOAN SPENCER-RUPER,                    )
   individually and on behalf of all     )
12 others similarly situated,             )
                                          )
13                                        )    **CLASS ACTION COMPLAINT**
                          Plaintiff,      )
14                                        )    **JURY TRIAL DEMANDED**
                                          )
15         v.                             )
                                          )
16 MY MIXTAPEZ, INC. D/B/A MY             )
   MIXTAPEZ, DUENAS MOBILE               )
17 APPLICATIONS LLC D/B/A                 )
   VUZIQ, AND D/B/A MY                    )
18 MIXTAPEZ, JUAN CARLOS                  )
   DUENAS, RICKY DUENAS, AND             )
19 DANNY DUENAS,                          )
                                          )
20                        Defendants.     )
                                          )

21              **CLASS ACTION COMPLAINT**

22

23      Plaintiff Joan Spencer-Ruper, individually and on behalf of all others similarly

24 situated, brings this Class Action Complaint to secure redress for violations of the

25 Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, resulting from

26 repeated text messages made by or behalf of Defendants to the cellular telephones of

27 Plaintiff and others using an automatic telephone dialing system.  Plaintiff alleges as

28

                            1

follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief.

**PARTIES**

1.      Plaintiff Joan Spencer-Ruper is a citizen of the State of California and resides in Orange County, California.

2.      Defendant My Mixtapez, Inc. d/b/a My Mixtapez, is a Florida corporation and has its principal place of business at 30063 SW 157th Place, Homestead, FL 33033.

3.      Defendant Duenas Mobile Applications LLC d/b/a MyMixTapez and d/b/a VUZIQ, is a Florida limited liability and has its principal office at 30063 SW 157th Place, Homestead, FL 33033.

4.      My Mixtapez, Inc., is a subsidiary of DMA.

5.      Defendant Juan Carlos Dueñas is Co-Founder and CEO of My Mixtapez, Inc., and, on information and belief, resides at 30063 SW 157th Place, Homestead, FL 33033.

6.      He is CEO of Duenas Mobile Applications LLC.

7.      Defendant Ricky Dueñas is Co-Founder and CFO of My Mixtapez, Inc., and, on information and belief, resides at 30063 SW 157th Place, Homestead, FL 33033.

8.      He is COO of Duenas Mobile Applications LLC.

9.      Defendant Danny Dueñas is Co-Founder and VP of My Mixtapez, Inc., and, on information and belief, resides at 30063 SW 157th Place, Homestead, FL 33033.

10.      He is CFO of Duenas Mobile Applications LLC, as well as its registered agent.

11.      The Dueñas Defendants are brothers and, on information and belief, control or are involved in the marketing activities of their My Mixtapez, Inc.

**JURISDICTION AND VENUE**

12.     This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

13.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

14.     The Court has personal jurisdiction over Defendants because they conduct business in this state and have committed tortious acts within this state related to the sending of unlawful text messages into this state.

15.     Neither My Mixtapez, Inc., nor Duenas Mobile Applications LLC registered with California Secretary of State to transact business in California; however, the website https://mymixtapez.com/ (last visited Mar. 18, 2020), lists the following locations above the email address and telephone number for "My Mixtapez": "Atlanta • Los Angeles • Miami • Goiânia."

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

16.     The TCPA, passed into law in 1991, regulates and restricts the use of an automatic telephone dialing system (ATDS).

17.     "[T]he term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1045 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289 (2019).

18.     The TCPA protects consumers from unwanted text messages and calls and that are made with an ATDS.

19.     Specifically, 47 U.S.C. § 227(b)(1)(A) provides:

(1) **Prohibitions**  It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

20.     The Federal Communications Commission (FCC), which is empowered to issue rules and regulations implementing the TCPA, has issued rulings and clarified that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided to the individual.  *See* 2012 FCC Order, 27 FCC Rcd. at 1839 ("requiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer—providing permission in writing—to authorize autodialed or prerecorded telemarketing calls").

21.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (FCC has determined that text message falls within meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 734 (N.D. Ill. 2014) (noting defendant bears burden of showing that it obtained plaintiff's prior express consent before sending her text message).

22.     According to findings by the FCC, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

23.     The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by Dish Network, LCC*, 28 FCC. Rcd. 6574, 6574 (2013)).  Principles of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of section 227(b).  *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678 (9th Cir. 2014) (citing 28 F.C.C. Rcd. at 6590 n.124).  A ratification occurs when the benefits of the purportedly unauthorized acts are accepted with knowledge of material facts demonstrating the intent to adopt the unauthorized arrangement. *Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018).

24.     The TCPA provides for statutory damages of $500 to $1,500 per violation of Section 227(b) of the TCPA and of the implementing regulation, 47 C.F.R. § 64.1200.  *See* 47 U.S.C. § 227(b)(3).

25.     Specifically, the TCPA's damages provision states,

(3)  **Private right of action** A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A)     an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B)     an action to recover for actual monetary loss from such a violation, or to receive **$500 in damages for each such violation**, whichever is greater, or

(C)     both such actions.

47 U.S.C. § 227(b)(3)(A)-(C) (second emphasis added).

26.     If the Court finds that Defendants "willfully or knowingly" violated Section 227(b) "or the regulations prescribed under this subsection," the Court may increase the award amount up to threefold, i.e., $1,500 per violation of the statute and per violation of the regulation.  47 U.S.C. § 227(b)(3); *see Lary v. Trinity Physician*

1    *Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015) (holding that district court

2    erred in limiting damages to one violation per call; "the statute allows a person to

3    recover '$500 in damages for each' 'violation of this subsection'"; "Section 227(b)(1)

4    has no language limiting the recovery to $500 per 'call' or 'fax'").

5        27.    A "violation of the TCPA is a concrete, de facto injury." *Van Patten v.*

6    *Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017).

7                                     **FACTS**

8        28.    Defendants, directly or through other persons acting on their behalf,

9    conspired to, agreed to, contributed to, assisted with, or otherwise caused the wrongful

10   acts and omissions, including the dissemination of the text messages that are the

11   subject matter of this Complaint.

12        29.    Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

13        30.    Defendants are each a "person" as defined by 47 U.S.C. § 153(39).

14        31.    Defendants own, manage, run, or operate "MyMixtapez," which is a hip-

15   hop mixtape app for Android, iPhone, and Windows operating systems.

16        32.    The MyMixtapez app is described in detail at https://mymixtapez.com/

17   (last visited Mar. 18, 2020).

18        33.    A subpage, attached in full as **Exhibit A**, and quoted in part below

19   summarizes what the app provides and notes that a Premium Membership is available

20   for purchase:

21

22       THE FOLLOWING TERMS AND CONDITIONS OF USE ("**Terms**")
          govern the use of the website – mymixtapez.com ("**Website**") – and the

23       My Mixtapez Music & Mixtapez mobile application currently available
          on Apple iTunes, Google Play and provided by Microsoft on its store

24       ("**Mobile Application**") brought to you ("**you**" or "**your**") by Duenas

25       Mobile Applications LLC d/b/a VUZIQ ("**My Mixtapez**" or "**we**" or "
          **us**" or "**our**"), and any content, material, features or functionality made

26       available by or through this Website and Mobile Application, including

27       any subdomains thereof. The Website and Mobile Application is made

28       available to you by Duenas Mobile Applications LLC, or one of its

subsidiaries, each having adopted the following Terms. My Mixtapez provides downloadable software for the purpose of streaming and downloading music via an application for mobile and wireless devices; and downloadable software in the nature of a mobile application for streaming and downloading music mixtapes ("**My Mixtapez Service**" or "**Service**"). *

\* \* \*

**13.  Premium Membership; Payment Transactions.**

My Mixtapez offers a variation of the My Mixtapez Service free of charge for all users. However, you have the option to purchase a premium membership (Premium Membership") for use pursuant to the My Mixtapez Service. Premium Membership allows you the ability to use the My Mixtapez Service without advertisements, and may include other benefits that we have the right to amend from time-to-time without changing these Terms. Premium Membership also gives you the opportunity to try new features and receive exclusive offers from the My Mixtapez store. By purchasing the Premium Membership (or anything else directly from My Mixtapez) you warrant and represent the following:

1.  any and all credit card information submitted by you is complete, true and accurate as it relates to you;
2.  any and all charges incurred by you will be honored by your credit card company; and
3.  any and all charges incurred by you will be paid by you at the posted price, including any applicable taxes.

\* \* \*

\* The Service is memorialized and incorporated in and by federally recognized registered trademarks owned by Duenas Mobile Applications LLC (See Registration Nos. 4648593 ("My Mixtapez"); 4648615 (a design mark for "My Mixtapez"); and 4731673 (a design mark for "My Mixtapez")). My Mixtapez has additional trademark applications with the U.S. Patent and Trademark Office that are currently pending as of the date of the latest update of these Terms.

https://mymixtapez.com/about/terms-service (last visited Mar. 18, 2020).

34.     In the past four years, using an ATDS, Defendants or someone acting on their behalf sent Plaintiff many text messages advertising the My Mixtapez app or service, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

35.     Plaintiff received those text messages on her cellular telephone number ending 7874, on February 2, 6, and 7, 2020, as well as prior to February 2020. A screenshot from Plaintiff's cell phone showing those three February 2020 texts is attached as **Exhibit B**.

36.     Defendants' text messages, (a) annoyed, disturbed, and harassed Plaintiff, (b) intruded upon her solitude and seclusion, (c) invaded her privacy, (d) wasted her time, and (e) diminished her cellular telephone's battery.

37.     Not only did the receipt of the text messages distract Plaintiff away from her personal activities, she was forced to spend time investigating the source of the text messages and who sent them to her.

38.     Plaintiff never gave Defendants any consent to send her text messages, much less prior express consent.

39.     Upon information and belief, Defendants' ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

40.     Upon information and belief, Defendants' ATDS has the capacity to store numbers and to dial numbers without human intervention.

41.     Upon information and belief, Defendants used a combination of hardware and software systems which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention.

42.     The impersonal and generic nature of Defendants' text messages further demonstrates that Defendants used an ATDS to send them.

43.     The text messages made to Plaintiff and the Class Members were for the purpose of marketing, advertising, and promoting Defendants' app or services.

44.     These text messages were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

45.     Plaintiff did not provide Defendants or their agents prior express consent to receive text message, to her cellular telephone, pursuant to 47 U.S.C. § 227(b)(1).

46.     The unsolicited text messages by Defendants or their agents violated 47 U.S.C. § 227(b)(1).

47.     Defendants were aware that they were sending text messages to Plaintiff and other persons without their prior express consent.

## CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and of a similarly situated "Class" or "Class Members" defined as:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent text messages by Defendants or anyone on Defendants' behalf, to said person's cellular telephone number, using the same equipment used to send text messages to Plaintiff.

49.     Excluded from the Class are Defendants, and any subsidiary or affiliate of Defendants, and the directors, officers and employees of Defendants or their subsidiaries or affiliates, and members of the federal judiciary.

50.     This action has been brought and may properly be maintained as a class action against Defendants pursuant to Rule 23 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

51.     **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendants' conduct consisted of a standardized text messages to cellular telephone numbers, Plaintiff believes there are greater than 40 Class Members.  Plaintiff believes

1 that the Class is so numerous that joinder of all members of the Class is impracticable

2 and the disposition of their claims in a class action rather than incremental individual

3 actions will benefit the Parties and the Court by eliminating the possibility of

4 inconsistent or varying adjudications of individual actions.

5      52.      Upon information and belief, a more precise Class size and the identities

6 of the individual member thereof are ascertainable through Defendants' records,

7 including, but not limited to Defendants' text message and marketing records.

8      53.      Members of the Class may additionally or alternatively be notified of the

9 pendency of this action by techniques and forms commonly used in class actions, such

10 as by published notice, e-mail notice, website notice, fax notice, first class mail, or

11 combinations thereof, or by other methods suitable to this class and deemed necessary

12 or appropriate by the Court.

13      54.      **Existence and Predominance of Common Questions of Fact and Law**:

14 There is a well-defined community of common questions of fact and law affecting the

15 Plaintiff and members of the Class. Common questions of law or fact exist as to all

16 members of the Class and predominate over the questions affecting individual Class

17 Members. These common legal or factual questions include, but are not limited to, the

18 following:

19      a.      Whether, within the four years prior to the filing of this Complaint,

20      Defendants or their agents sent a text message (other than a message made for

21      emergency purposes or made with the prior express consent of the called party)

22      to a Class Member's cellular telephone number;

23      b.      Whether the dialing system used to send the text messages is an

24      ATDS;

25      c.      Whether any Defendant is vicariously liable for the TCPA

26      violations committed by others involved in the text-messaging campaigns;

27      d.      Whether any Defendant ratified the TCPA violations committed

28      by others involved in the text-messaging campaigns;

e. How Defendants obtained the cellular telephone numbers of Plaintiff and the Class;

f. Whether sending the text messages to Plaintiff and the Class violates the TCPA or its regulations, 47 CFR § 64.1200;

g. Whether Defendants willfully or knowingly violated the TCPA or its regulations, 47 CFR § 64.1200;

h. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble statutory damages, and attorneys' fees and costs for Defendants' acts and conduct; and

i. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendants from continuing to engage in their unlawful conduct; and

55. One or more questions or issues of law or fact regarding Defendants' liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

56. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

57. Plaintiff and members of the Class each received at least one text message, advertising the My Mixtapez app, which Defendants sent or caused to be placed to Plaintiff's and the Class Members' cellular telephone numbers.

58. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class.  Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class.  Plaintiff has retained counsel competent and experienced in litigation in the federal courts, TCPA litigation and class action litigation.

59.     **Superiority**: A class action is the superior method for adjudicating this controversy fairly and efficiently.  While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small.  As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendants by any member of the Class.

60.     **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to Plaintiff and the Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing violations of the TCPA, and to order Defendants to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted calls.

61.     Defendants–or third parties directed by Defendants–used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without human intervention to send non-emergency telephone text messages to the cellular telephones of Plaintiffs and the other members of the Class defined above.

62.     These text messages were made without regard to whether Defendants had first obtained express permission from the recipients to send the communications. In fact, Defendants did not have prior express consent to send text messages to the cellular phones of Plaintiff and the other members of the putative Class when the text messages were sent.

63.     Defendants have therefore violated Section 227(b)(1)(A)(iii) of the TCPA.

64.     As a result of Defendant's negligent violations of Section 227, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each violation, pursuant to Section 227(b)(3)(B).

65.     At all relevant times, Defendants knew or should have known that their conduct as alleged herein violated the TCPA.

66.     Defendants knew that they did not have prior express consent to send text messages to Plaintiff and the Class, and they knew or should have known that their conduct was a violation of the TCPA; therefore, the Court should treble the amount of statutory damages available to Plaintiff and the Class pursuant to Section 227(b)(3)(C).

67.     Likewise, since Defendants knew or should have known that Plaintiff and Class Members did not give prior express consent to receive the text messages, Plaintiff and the Class should be awarded $1,500.00 in statutory damages, for each violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

68.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(b)

69.     Plaintiff incorporates by reference all of the allegations contained in all of the above paragraphs of this Complaint as though fully stated herein.

70.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13

71.     Automatic telephone dialing system refers to "equipment which has the capacity---(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

72.     Defendants – or third parties directed by Defendants – used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

73.     These calls were made without regard to whether Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cellular phones of Plaintiff and the other members of the putative Class when its calls were made.

74.     Defendants have, therefore, violated Section 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

75.     Furthermore, it is a violation of the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior consent of the called party, unless the call is initiated for emergency purposes." 47 U.S.C. 227(b)(1)(B).

76.     These calls were made without regard to whether Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call any of these cellular phones.

77.     Defendants have, therefore, violated Section 227(b)(2) of the TCPA by initiating telephone class while using an artificial or prerecorded voice to deliver non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

14

78.   The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of Section 227.

79.   As a result of Defendants' negligent violations of Section 227, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each violation, pursuant to Section 227(b)(3)(B).

80.   At all relevant times, Defendants knew or should have known that its conduct as alleged herein violated the TCPA.

81.   Defendants knew that it did not have prior express consent to make these calls and knew or should have known that its conduct was a violation of the TCPA.

82.   Because Defendants knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to Section 227(b)(3)(C).

83.   Likewise, since Defendants knew or should have known that Plaintiff and Class Members did not give prior express consent to receive calls using artificial or prerecorded voice, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to Section 227(b)(3).

84.   As a result of Defendants knowing or willful violations of Section § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

85.   Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff requests the Court grant Plaintiff and the Class Members relief against Defendants, as set forth in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the Class, against Defendants, jointly and severally, for:

a.    certify this action as a class action and appoint Plaintiff as Class Representative;

b.    appoint the undersigned counsel as Class Counsel;

c.    award damages of $500 per violation per text message pursuant to 47 U.S.C. § 227(a)(3)(B);

d.    award enhanced damages of up to $1,500 per violation per text message pursuant to 47 U.S.C. § 227(a)(3);

e.    enjoin Defendants and their contractors, agents, and employees from continuing to send TCPA-violating text messages pursuant to 47 U.S.C. § 227(a)(3)(A);

f.    award Class Counsel reasonable attorneys' fees and all expenses of this action and require Defendants to pay the costs and expenses of class notice and claim administration;

g.    award Plaintiff an incentive award for her efforts on behalf of, and benefits conferred to, the Class and other relevant factors;

h.    award Plaintiff prejudgment interest and costs; and

i.    grant Plaintiff all other relief deemed just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

1

## **DOCUMENT PRESERVATION DEMAND**

2

Plaintiff demands that Defendants take affirmative steps to preserve all text

3

message logs, spreadsheets, invoices, records, lists, electronic databases, or other

4

itemization of telephone numbers associated with Defendants and the communication

5

or transmittal of advertisements as alleged herein.

6

DATED:  March 30, 2020          EDWARDS POTTINGER LLC

7

8

By: */s/ Seth M. Lehrman*
Seth M. Lehrman
Attorney for Plaintiff
Joan Spencer-Ruper

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Seth M. Lehrman (178303)
   seth@epllc.com
2  EDWARDS POTTINGER LLC
   425 North Andrews Avenue, Suite 2
3  Fort Lauderdale, FL 33301
   Telephone: 954-524-2820
4  Facsimile:  954-524-2822

5  Attorney for Plaintiff
   Joan Spencer-Ruper

6

7

8                UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                    SOUTHERN DIVISION

11 JOAN SPENCER-RUPER,                    )
   individually and on behalf of all     )
12 others similarly situated,             )
                                          )
13                                        )   **COMPLETE LIST OF**
                          Plaintiff,      )   **DEFENDANTS**
14                                        )
        v.                                )   **JURY TRIAL DEMANDED**
15                                        )
   MY MIXTAPEZ, INC. D/B/A MY             )
16 MIXTAPEZ, DUENAS MOBILE                )
   APPLICATIONS LLC D/B/A                 )
17 VUZIQ, AND D/B/A MY                    )
   MIXTAPEZ, JUAN CARLOS                  )
18 DUENAS, RICKY DUENAS, AND              )
   DANNY DUENAS,                          )
19                                        )
                          Defendants.     )
20                                        )
                                          )
21

22 MY   MIXTAPEZ,   INC.   D/B/A   MY   MIXTAPEZ,   DUENAS   MOBILE

23 APPLICATIONS LLC D/B/A VUZIQ, AND D/B/A MY MIXTAPEZ, JUAN

24 CARLOS DUEÑAS, RICKY DUEÑAS, AND DANNY DUEÑAS

25

26

27

28

                              1